Davis, P. J.
Upon the several facts found by the auditor, which, in the absence of the evidence taken by him, we must assume to be fully justified by proofs, we are of opinion that the surrogate properly disposed, under the circumstances of this case, of all the exceptions, except the one hereinafter specially considered. As a general rule, we think it should not be held to be either lawful or proper for executors or administrators to borrow money on the credit of an estate, for the sole purpose of evading taxation by purchasing securities exempt from assessment, and thereby temporarily tiding over the period within which assessments must be made, with intent then to dispose of the same to repay the borrowed money. To encourage such practices would be against public policy; and where they have been pursued, if losses have been sustained, the representatives, and not the estate, would properly be charged with them.
In other words, it is no part of an executor’s duty to resort to devices to evade the lawful assessment and taxation of the estate in his hands; and if, in so doing, he incurs liabilities, or buys securities which bring loss upon the funds in his hands, however clear his motives to benefit the estate may be, he will doubtless be adjudged to make good the loss.
In this case no loss ensued to the estate of the parties interested ; and what was done resulted in a profit, and was done with the consent of all the parties interested, but one, who is now an appellant. In closing up the transaction, which produced a small net profit, besides escaping taxation for a considerable amount, the executors paid interest on the money borrowed to purchase the government bonds bought by them to evade assessment, and it is claimed by the appellants, *384 that they should be charged with the interest thus paid. We would agree to this view, if the interest paid, or part of it, had been a loss, and would require the executors to make good the loss. But the estate cannot take the profit of the transaction without adopting the incidents that attended its realization. The result reached by the surrogate was an equitable one under all the circumstances of the case, and we are not inclined to disturb it.
It is strenuously insisted, however, that the interest paid should have been charged to the capital of the estate and not to the income fund out of which the appellants were entitled to annuities. We think the disposition made by the auditor is correct. The scheme to avoid taxation was for the benefit of that fund, against which taxes are chargeable before its net amount can be correctly ascertained for distribution. It was paid to save that fund from a much larger expenditure, and seems to have accomplished that object. The several other exceptions, except the one yet to be specially mentioned, are considered at length in the opinion of the surrogate, and, we think, correctly disposed of by him.
, The exception to the objection that the executors could not lawfully take their commissions, as they were taken by them, ought not to have been overruled.
It appears that a few months after the executors entered upon their duties the sum of $15,000 was withdrawn from the funds of the estate and divided between the three executors as part of their commissions. They were not entitled to compensate themselves in that manner. No commissions were then earned, and for aught that appeared at that time, none might have been earned.
The statute fixes the rate of compensation to executors and administrators, and provides the mode in which it shall be ascertained and paid. Until that *385 statutory requirement is complied with the executors have neither power nor right to pay themselves, at their own discretion.
It is in the power of the surrogate or court to deny all commissions, where there has been misconduct on the part of the executors, resulting in losses- to the estate greater than the lawful commission. And executors may be personally charged with losses and injuries prejudicial to their trust, and denied commissions altogether, in the sound discretion of the court, in cases deserving great severity of censure.
The course of the executors in this case, although taken in good faith and under the advice of counsel, ought not to have been sanctioned, because of its danger as a precedent.
The account of the executors should have been charged with the amount paid to themselves respectively, and with interest on that amount from the time the money was withdrawn, and the surrogate should have awarded commissions by his decree out of the estate remaining, or, which in this case would practically produce the same result, the account should have been charged with interest from the day of its withdrawal, upon the sum so improperly applied by the executors.
In that regard the decree of the surrogate must be modified.
After such modification (which it is supposed the learned counsel for the respective parties will have no difficulty in adjusting) the decree is to be affirmed, without costs of the appeal.
Otherwise, the decree must be reversed pro tanto,- and the question of the amount to be charged against the executors remanded to the surrogate for ascertainment.
Brady, J., concurred.